# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **DONALD LARRY MARTIN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 5:15-CV-01677-VEH** |
| | ) |
| **NANCY A. BERRYHILL, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Donald Larry Martin ("Mr. Martin") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"),[1] who determined that Mr. Martin's Retirement Insurance Benefits were subject to the windfall elimination provision of the Social Security Act, 42 U.S.C. § 415(a)(7). That section provides for a reduction in Social

---

[1] Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. *See* https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

Security retirement benefits when a claimant simultaneously receives a pension based on employment not covered by Social Security. Mr. Martin timely pursued and exhausted his administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g). Because this Court finds that the Commissioner's interpretation of the statute and regulations is reasonable, the Commissioner's decision is due to be **AFFIRMED**.

### STATEMENT OF THE CASE

The material facts in this case are not in dispute. Mr. Martin was in the military service from February 5, 1970 to September 9, 1971. Tr. 14. On September 12, 1982, Mr. Martin began employment as a National Guard Dual Status Technician ("DSTech") in the Excepted Civil Service. Tr. 19. This position also required that Mr. Martin be assigned to a compatible military position as a member of the Alabama National Guard. *Id.*

Mr. Martin's work as a DSTech military personnel clerk was similar to a unit clerk in the active Army. Tr. 161. He received federal Civil Service pay for his work as a dual status technician. Tr. 163. As a member of the Alabama National Guard, he also attended scheduled weekend drills, for which he received military pay. *Id.* During the work week, he was in military uniform. Tr. 168.

Mr. Martin's unit received military orders to report for a one-year tour in

2001. Tr. 163. During his physical examination prior to the start of his tour, he was diagnosed with asthma and was found to be non-deployable. Tr. 163-64. Mr. Martin was medically discharged by the National Guard on December 4, 2004. Tr. 165. As membership in the National Guard was a requirement for his Civil Service position as a DSTech, he was no longer eligible for the DSTech position and was granted federal Civil Service disability pay beginning on April 9, 2005. Tr. 166.

Mr. Martin filed for Retirement Insurance Benefits ("RIB") on October 30, 2012. Tr. 14. He was awarded RIB and began receiving RIB monthly benefits in December 2012. Tr. 16-18. This pension, which is based on his service as a National Guard dual status technician, is paid by the Office of Personnel Management under the Civil Service Retirement System ("CSRS") (his "Civil Service pension"). Tr. 140. He also receives a pension based on his service in the Alabama Army National Guard, which is paid by the Defense Finance and Accounting Service, an agency of the United States Department of Defense (his "military retired pay"). *Id.*

Mr. Martin's RIB was reduced from $647.90 per month to $439.20 based on the Social Security Administration ("SSA")'s application of the Windfall Elimination Provision ("WEP"). Tr. 16. On December 23, 2012, Mr. Martin requested that the SSA reconsider the application of the WEP modified formula to

3

his Civil Service benefits calculation. Tr. 20. On January 15, 2013, the SSA

upheld its application of the WEP to his RIB benefits. On March 11, 2013, Mr.

Martin filed a request for a hearing with an Administrative Law Judge ("ALJ").

Tr. 29.

The ALJ conducted a hearing on the matter on September 17, 2013. Tr. 38.

Mr. Martin was 62 years old at the time of the hearing. *Compare* Tr. 38 with Tr.

14. On December 5, 2013, the ALJ issued an opinion concluding that Mr. Martin's

RIB were correctly calculated pursuant to the WEP. Tr. 10-13. After consideration

of the entire record, the ALJ made the following findings:

1.  The claimant's work as a military technician/clerk for the Alabama National Guard was properly classified as work not covered by Social Security.

2.  The WEP was properly applied to reduce the amount of the claimant's Social Security Retirement benefits.

3.  Whether or not a reduction in benefits is applicable due to the continued receipt of civil service disability benefits is not before the undersigned.

Tr. 12.

Mr. Martin timely petitioned the Appeals Council to review the decision on

January 20, 2014. Tr. 6A. On July 28, 2015, the Appeals Council issued a denial

of review of his claim. Tr. 3-5. Mr. Martin filed a Complaint with this Court on

September 24, 2015, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on February 12, 2016. (Doc. 6). Mr. Martin filed a supporting brief (doc. 8) on March 28, 2016, and the Commissioner responded with her own (doc. 9) on April 27, 2016. Mr. Martin filed a reply brief on May 11, 2016 (doc. 11).

## STANDARD OF REVIEW

The Court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the

Court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the Court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## APPLICABLE STATUTES, REGULATIONS, AND ADMINISTRATIVE RULINGS

### 1.    The National Guard Technician Act of 1968

In 1968, Congress passed the National Guard Technician Act, which created the National Guard position of "military technician (dual status)." Pub. L. No. 90-486, §2(1), 82 Stat. 755, 755-56, codified as 32 U.S.C. §709. A DSTech is a "Federal civilian employee" who is "assigned to a civilian position as a technician in the organizing, administering, instructing, or training of the Selected Reserve or in the maintenance and repair of supplies or equipment issues to the Selected Reserve or the armed forces." 10 U.S.C. § 10216(a)(1).

A DSTech "shall be authorized and accounted for as a separate category of civilian employees," 10 U.S.C. § 10216(a)(2), and is both "an employee of the Department of the Army . . . and an employee of the United States." 32 U.S.C. § 709(e); *see also* 5 U.S.C. § 5534 ("A Reserve of the armed forces or member of the National Guard may accept a civilian office or position under the Government of the United States . . . and he is entitled to receive the pay of that office or position in

addition to pay and allowances as a Reserve or member of the National Guard.").

As a condition of employment, a National Guard DSTech must maintain membership in the National Guard, hold the military grade specified for the position, and wear the uniform "appropriate for the member's grade and component of the armed forces" while "performing duties as a military technician (dual status)." 10 U.S.C. § 10216(a)(1)(B); 32 U.S.C. §709(b)(2-4).

### 2.    The Windfall Elimination Provision

The present dispute concerns the Commissioner's application of the Windfall Elimination Provision to Mr. Martin's retirement insurance benefits.  As the Eleventh Circuit has explained, Congress enacted the WEP

> to eliminate the unintended "double dipping" that accrued to workers who split their careers between employment taxed for Social Security benefits ("covered") and employment exempt from Social Security taxes ("noncovered"). The SSA determines a beneficiary's primary insurance amount (the figure on which the amount of actual benefits is partially based) from his average monthly earnings. 42 U.S.C. § 415. Prior to the enactment of the WEP, this calculation was completed without regard to whether the individual's wages were covered or noncovered. As a result, an individual who had worked for both covered and noncovered wages in the course of his employment history would receive both full Social Security benefits and whatever pension benefits were provided by his noncovered employment. The WEP, as codified at 42 U.S.C. § 415(a)(7), provides that the primary insurance amount for such individuals be computed using a modified formula.

*Stroup v. Barnhart*, 327 F.3d 1258, 1259-60 (11th Cir. 2003). The WEP "seeks to

preserve the progressive nature of the Social Security system by ensuring that the formula the agency uses to calculate benefits does not advantage high income workers who split their careers between covered and non-covered employment over those who paid Social Security taxes for their entire careers." *Hawrelak v. Colvin*, – Fed Appx. –, 2016 WL 3471742, at *1 (7th Cir. 2016) (unpublished).

In 1994, Congress amended the WEP to add an exception for certain classes of individuals:

> (7)(A) In the case of an individual whose primary insurance amount would be computed under paragraph (1) of this subsection, who –
>
> (i) attains age 62 after 1985 . . or
>
> (ii) would attain age 62 after 1985 and becomes eligible for a disability insurance benefit after 1985,
>
> and who and first becomes eligible after 1985 for a monthly periodic payment (including a payment determined under subparagraph (C), but excluding (I) a payment under the Railroad Retirement Act of 1974 or 1937 [45 U.S.C.A. §§ 231 et seq., 228a et seq.], (II) a payment by a social security system of a foreign country based on an agreement concluded between the United States and such foreign country pursuant to section 433 of this title, and **(III) a payment based wholly on service as a member of a uniformed service (as defined in section 410(m) of this title))**[2] which is based in whole or in part upon his or her earnings

---

[2]  Section 410(m) provides that a "member of a uniformed service" includes "any person appointed, enlisted, or inducted in a component of the Army, Navy, Air Force, Marine Corps, or Coast Guard (including a reserve component as defined in section 101(27) of Title 38)." 38 U.S.C. § 101(27) then defines "reserve component" to include, among others, the "Army National Guard of the United States."

> for service which did not constitute "employment" as defined in section 410 of this title for purposes of this subchapter (hereafter in this paragraph and in subsection (d)(3) of this section referred to as "noncovered service"), **the primary insurance amount of that individual during his or her concurrent entitlement to such monthly periodic payment and to old-age or disability insurance benefits shall be computed or recomputed under subparagraph (B).**

42 U.S.C. § 415(a)(7)(A) (emphasis in bold hereinafter referred to as the "uniformed services exception"). As a result of this amendment, the WEP-modified formula of benefit calculation no longer applies to those individuals who receive payments based wholly on service as a member of a uniformed service.

### C. *Petersen* and Social Security Acquiescence Ruling 12-1(8)

Only one Circuit has addressed the issue of whether a DSTech's retirement benefits should be reduced by the WEP. In *Petersen v. Astrue*, 633 F.3d 633 (8th Cir. 2011), a factually similar case, the DSTech claimant sought RIB payments and was awarded a reduced amount by the SSA pursuant to the WEP. The Eighth Circuit upheld the district court's reversal of the SSA's decision, determining that the uniformed services exception clearly and unambiguously applied to the work performed by DSTechs. That court's decision hinged on the requirement that DSTechs maintain military membership and wear their uniforms when performing civilian technician work. Accordingly, the National Guard technician in *Petersen*

9

was permitted to receive his CSRS retirement benefits in full, without application of the WEP modified formula, because the Eighth Circuit determined that his work as a DSTech met the uniformed services exception.

Soon after and in response to the Eighth Circuit's decision in *Petersen*, the SSA issued Acquiescence Ruling 12-1(8), 77 Fed. Reg. 51842-01 (Aug. 27, 2012), correction published 77 Fed Reg. 54646-01 (September 5, 2012), effective August 27, 2012 (hereinafter "AR 12-1(8)"). The SSA "issues two types of rulings which do not involve notice-and-comment procedures: Social Security rulings, which address both administrative and judicial decisions, and Acquiescence Rulings, which relate only to decisions by federal appellate courts." *Hagans v. Commissioner of Social Sec.*, 694 F.3d 287, 301 (3d Cir. 2012). Acquiescence Rulings "explain how SSA will apply a holding by a United States Court of Appeals that is at variance with [the agency's] national policies for adjudicating claims. We apply the holding to other cases in the same circuit when the issues involved are the same."[3]

The SSA will issue an Acquiescence Ruling when it "determine[s] that a United States Court of Appeals holding conflicts with [the Commisioner's]

_____

[3] *Acquiescence Ruling Definition, available at* https://www.ssa.gov/regulations/def-ar.htm (last visited February 16, 2017).

interpretation of a provision of the Social Security Act or regulations." 20 C.F.R. §

404.985(b). The ruling "describe[s] the administrative case and the court decision,

identif[ies] the issue(s) involved, and explain[s] how [the Commissioner] will

apply the holding, including, as necessary, how the holding relates to other

decisions within the applicable circuit." *Id.* Acquiescence Rulings are announced

through publication in the "Notices" Section of the Federal Register. *See*

*Acquiescence Ruling Definition, supra.* Although they "do not have the force and

effect of the law or regulations," they are "binding on all components of SSA

unless superceded, rescinded, or modified by another ruling." *Id.*; *see also*

*Hagans*, 694 F.3d at 301 (same).

AR 12-1(8) limits the application of *Petersen* to claims within the Eighth

Circuit. It states:

> We interpret the uniformed services exception to the WEP to mean that
> only monthly benefit payments based on military service are exempt
> from the WEP. Under this interpretation, monthly payments that are
> based on non-covered civilian public employment, including that of
> National guard technicians who work under the CSRS, are not exempt
> from the WEP. Moreover the effect of the uniformed services exception
> to the WEP and the regulatory provision found at 20 C.F.R. 404.213(9)
> is to exempt from the WEP only military retirement pay based on
> reserve inactive duty training (IDT). Other kinds of military duty, such
> as active duty, already were not subject to the WEP because they have
> been covered employment since 1956. The WEP does not apply to
> noncovered work before 1957.

> The legislative history of the uniformed services exception to the WEP explains that <u>the purpose of the exception was to exempt military retired pay, based on noncovered IDT military duty, from application of the WEP</u>. The exception was not intended to exempt any pension based on civilian work from application of the WEP. <u>The Court of Appeals declined to consider the legislative history of the uniformed services exception because it found there was no ambiguity to the uniformed services exception</u>.

*Id.* (emphases added). The Ruling then explains that the SSA has acquiesced to the Eighth Circuit's ruling only for applicants who are permanent legal residents of a state within that Circuit. However, for DSTech applicants who are not permanent legal residents of a state within the Eighth Circuit, the WEP modified formula will still apply:

> Social Security old-age or disability applicants and beneficiaries who receive a CSRS pension based on non-covered work as dual status National Guard technicians, and who are permanent legal residents of a State within the Eighth Circuit, should have their Social Security benefits computed using the normal PIA, rather than the WEP PIA described in 42 U.S.C. 415(a)(7) of the Act. <u>A decisionmaker should not apply this AR to an applicant or beneficiary who is not a permanent legal resident of a State within the Eighth Circuit at the time of making the determination or decision to apply the WEP</u>. Before we determine that the WEP does not apply, we must have evidence that an applicant's or beneficiary's CSRS pension is based on service as a dual status civilian technician with the National Guard.

*Id.* (emphasis added). In accordance with AR 12-1(8), the SSA also issued a

Program Operations Manual System (POMS) provision addressing the *Petersen*

decision.[4]  Together, the Acquiescence Ruling and the POMS state that the SSA will apply the outcome in *Petersen* only to dual status retirees who reside in states located within the Eighth Circuit. For any other dual status technician retirees, their Civil Service pensions will still be subject to the WEP. This Court must therefore decide, as a matter of first impression in this Circuit, whether the Civil Service pension that Mr. Martin receives based on his prior employment  as a National Guard technician triggers the WEP exception found in 42 U.S.C. §415(a)(7)(A).

## DISCUSSION

The Court is mindful that here, as in any case involving statutory construction,

> we begin with the plain language of the statute. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). "We do not look at one word or term in isolation, but instead we look to the entire statutory context." *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir.1999). However, where the statutory language is ambiguous "we may look beyond the plain language of a statute at extrinsic materials." *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1226 (11th Cir.2001) (citation omitted). If "the language of the statute does not clearly answer our question ... we must look beyond the text and determine the legislative intent." *DBB, Inc.*, 180 F.3d at 1282.

---

[4]  *See* POMS RS 00605.380 National Guard Civilian Pensions for Dual Status Technicians: *Petersen* Court Case, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0300605380 (last visited February 22, 2017).

*Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments*, 553 F.3d 1351, 1362 (11th Cir. 2008).

In reviewing the SSA's interpretation of a statute that the agency administers, the Court must apply the two-step inquiry first set out in *Chevron U.S.A., Inc v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-44, 104 S. Ct. 2778, 2781-82, 81 L. Ed. 2d 694 (1984). As the Supreme Court has explained, applying *Chevron* to a Social Security determination, "when a statute speaks clearly to the issue at hand we must give effect to the unambiguously expressed intent of Congress, but when the statute is silent or ambiguous we must defer to a reasonable construction by the agency charged with its implementation." *Barnhart v. Thomas*, 540 U.S. 20, 26, 124 S. Ct. 376, 380, 157 L. Ed. 2d 333 (2003) (internal citation omitted) (holding that "the interpretation adopted by SSA is at least a reasonable construction of the text and must therefore be given effect.").

## A.    Ambiguity of 42 U.S.C. 415(a)(7)(A), the Uniformed Services Exception

Both parties vigorously dispute whether the uniformed services exception should apply to exclude the retirement benefits of dual status technicians, like Mr. Martin, from facing the Windfall Elimination Provision.

Mr. Martin presents several arguments in support of his contention that his

14

Civil Service pension unambiguously meets the uniformed services exception under the plain language of 42 U.S.C. § 415(a)(7)(A). He first contends that service performed by a dual status military technician, such as himself, constitutes "service as a member of a uniformed service," particularly given that he was required to be a member of the National Guard, hold the necessary military grade, and wear the appropriate military uniform while performing his dual technician duties. (Doc. 8 at 7-8).

Next, Mr. Martin argues that his service as a dual status technician was "essentially military in nature," in reliance on Eleventh Circuit case law finding that dual service technicians perform a role that is sufficiently military in nature to preclude DSTechs from obtaining judicial review of employment-related decisions. *Id.* at 8-15. In *Best v. Adjutant Gen., State of Florida, Dep't of Military Affairs*, 400 F.3d 889 (11th Cir. 2005), the Eleventh Circuit concluded that the Civil Service Retirement Act of 1978 ("CSRA") expressly precluded judicial review under the Administrative Procedures Act ("APA") of adverse personnel actions involving technicians employed under the National Guard Technicians Act because the CSRA already provided for "an elaborate new framework for evaluating adverse personnel decisions against federal employees." *Id.* at 892 (citing *United States v. Fausto*, 484 U.S. 439, 443, 108 S. Ct. 668, 671, 98 L. Ed.

2d 830 (1988); *see also NeSmith v. Fulton*, 615 F.2d 196, 201 (5th Cir. 1980)[5]

("Formally, a civilian technician is a federal civil employee outside of the

competitive civil service. In substance, however, the position is one in a military

organization . . . one of the express purposes of the National Guard Technician Act

was to 'recognize the military characteristics of the National Guard' by requiring

civilian technicians to be military members of the National Guard and by

providing for their supervision by the adjutants general . . . .'").

The adverse personnel employment-based claims of a National Guard

technician are non-justiciable in the Eleventh Circuit due to the military nature of

the position and the review framework provided for such claims by the CSRA.

However, the mere fact that the CSRA precludes judicial review of adverse

employment actions brought by dual status technicians does not necessarily mean

that, for non-employment based *retirement benefit* decisions, the payments

received are *based wholly on service* as a member of a uniformed service.[6]

---

[5]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1081)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to 1981.

[6]   Mr. Martin also cites to *Taylor v. Jones*, 653 F.2d 1193, 1200 (8th Cir. 1981), where the court found the claimant was for all relevant purposes on full-time active military duty when she served as a recruiter for the National Guard. The court in *Taylor* distinguished between civilian and military work for the National Guard and concluded that Title VII did not apply to a recruiter who "was on full-time military duty with the Arkansas National Guard." *Id.* at 1200. Unlike the claimant in *Taylor*, however, Mr. Martin does not contend that he was on full-time duty with the National Guard *in his technician position*. *Taylor* does not shed light on whether

The Commissioner's argument is twofold. First, she argues that the uniformed services exception unambiguously does *not* apply to dual status technicians like Mr. Martin. Secondly, the Commissioner argues that, if the Court determines that 42 U.S.C. § 415(a)(7)(A) is ambiguous in its application to the benefits of dual-status technicians, the Court should defer to the SSA's statutory interpretation, as outlined in AR 12-1(8). To support this contention, the Commissioner highlights that a DSTech is a (1) "federal civilian employee" who is (2) "assigned to a civilian position." 10 U.S.C. § 10216(a)(1); 32 U.S.C. § 709(b)(3). Additionally, the Commissioner points out that Mr. Martin was explicitly statutorily authorized to receive wages for his "civilian office or position" in addition to the pay and allowances he received as a National Guard reservist. *See* 5 U.S.C. § 5534.

The Commissioner further contrasts the payment a DSTech receives as a federal employee with the military pay that a member of the National Guard receives while attending inactive duty training. *Cf.* 5 U.S.C. § 5334 *with* 37 U.S.C. § 206. Mr. Martin acknowledges that he currently receives both a military pension and a Civil Service pension, and neither party disputes that Mr. Martin's military

---

the pension that Mr. Martin received for his weekday technician work, which is a civilian position performed by a Federal civilian employee, *see* 10 U.S.C. § 10216(a)(1)(C), should similarly be exempt from the WEP.

retirement pay is not subject to the WEP modified formula. Tr. 140.

The ALJ concluded, and this Court does not disagree, that Mr. Martin's job as a dual status technician was essentially military in nature. *See* (Doc. 8 at 8); Tr. 12. The question remains, however, whether his Civil Service *benefit payments* for his work as a DSTech are *wholly based* on his service as a member of the uniformed services.

The Court agrees with the Commissioner that the text of  42 U.S.C. § 415(a)(7)(A) does not speak directly to whether the Civil Service pension that dual status technicians receive should be exempted from the WEP. Section 415(a)(7) does define either "wholly" or "service as" in order to guide the Court's analysis. Both terms are susceptible to more than one interpretation when viewed in the context of Mr. Martin's DSTech role. However, the duality of the position, which straddles both civilian and military camps, seemingly contradicts the "wholly" military language of the uniformed services exception.

Additionally, the Court finds persuasive the language other courts have used to describe the hybrid nature of a dual status technician's employment. *See Davis v. Vandiver*, 494 F.2d 830, 832 (5th Cir. 1974) ("The principal purpose of the [NGTA] . . . was to create a bifurcated nature of technician employment - to confer federal status on civilian technicians while granting administrative authority to

18

State officials, headed in each State by the Adjutant General."); *Walch v. Adjutant General's Dept. of Texas*, 533 F.3d 289, 291 (5th Cir. 2008) (distinguishing a claimant's "traditional National Guard position" from his "full-time civilian position with the Guard, a Monday through Friday job if you will, as a 'federal technician.'"); *Paulk v. Harvey*, No. 2:05-CV-1141, 2006 WL 2786942, at *3 (M.D. Ala. Sept. 27, 2006) (Watkins, J.) (simultaneously considering dual-status technicians as federal employees "*for certain purposes such as retirement and other benefits*," yet acknowledging that the military nature of the position renders those injuries "incident to his services in the Alabama Army National Guard" non-justiciable in federal district court) (emphasis added).

Further, the Court is not fully persuaded by the Eighth Circuit's substantial focus in *Petersen* on the conditions imposed on a dual status technician, including wearing a uniform and maintaining a concurrent National Guard position. By relying on these admittedly military aspects of a DSTech's position, as well as the "service as a member of a uniformed service" language in the exception, the Circuit accorded less weight to the "*payment* based *wholly* on . . . " language immediately preceding. Additionally, because it found that the plain language of the uniformed services exception was unambiguous, the Eighth Circuit in *Petersen* had no reason to consider the legislative history upon which the Commissioner

19

now relies or otherwise determine whether the Commisioner's interpretation was reasonable.

The Eighth Circuit also was reviewing a district court record in which there was "no dispute that the plaintiff's OPM pension is based 'wholly on service' as a military technician with the Nebraska Air National Guard." *Petersen*, No. 4:08-CV-3718, 2009 WL 484232, at *4 (D. Neb. Feb. 23, 2009). In this case, however, the parties vehemently disagree as to whether Mr. Martin's pension is *wholly* based on service as a member of the uniformed services, an issue which lies at the crux of this Court's analysis. Mr. Martin's DSTech position (and subsequent retirement pay) was neither clearly military, nor clearly civilian. Even though Mr. Martin was a member of the uniformed service at the time he received wages as a DSTech, he acknowledges that he received Federal civilian pay.

The Court also benefits from the availability of the SSA's Acquiescence Ruling, issued subsequent to *Petersen*, which speaks directly to the Agency's position. Furthermore, only decisions of the Supreme Court or the Eleventh Circuit Court of Appeals are binding on this Court. *Jaffree v. Wallace*, 705 F.2d 1526, 1532 (11th Cir. 1983), *prob. juris. noted in part, judgment aff'd in part*, 466 U.S. 924, 104 S. Ct. 1704, 80 L. Ed. 2d 178 (1984), *and aff'd*, 472 U.S. 38, 105 S. Ct. 2479, 86 L. Ed. 2d 29 (1985) (reemphasizing that the only courts a district

20

court must be obedient to are the Circuit within which it is found and the Supreme

Court of the United States.).

Simply put, it is not clear to the Court that Congress intended for the WEP

uniformed services exception found in 42 U.S.C. § 415(a)(7)(A) to apply to Civil

Service pensions earned by DSTechs. Accordingly, the Court concludes that the

statute is ambiguous as to whether the WEP exception should apply to Mr.

Martin's RIB. On its own, the statutory language of the WEP uniformed services

exception could be interpreted to support either the Commissioner's or Mr.

Martin's position. Given Congress's silence on this specific issue, the Court will

proceed to *Chevron* step two and consider whether the SSA's interpretation is

based on a permissible construction of the statute.

## B.     The Commissioner's Interpretation of Section 415(a)(7)(A) Is Entitled to Deference

As the Supreme Court stated in *Chevron*, "we have long recognized that

considerable weight should be accorded to an executive department's construction

of a statutory scheme it is entrusted to administer." 467 U.S. at 844, 104 S. Ct. at

2782.  The Court has consistently given deference to administrative interpretations

whenever a "decision as to the meaning or reach of a statute has involved

reconciling conflicting policies, and a full understanding of the force of the

statutory policy in the given situation has depended on more than ordinary knowledge respecting the matters subjected to agency regulations." *Id.* The question before this Court is not whether the SSA's interpretation is the appropriate one or the interpretation this Court would have necessarily taken of its own accord, but rather whether it is a reasonable and permissible interpretation.

Here, the Commissioner's interpretation was a reasonable policy choice for the agency to make and accordingly will receive deference. *Chevron* deference will be accorded to an agency interpretation when Congress has "delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226-27, 121 S. Ct. 2164, 2171, 150 L. Ed. 2d 292 (2001); *see also Astrue v. Capato ex rel. B.N.C.*, 132 S. Ct. 2021, 2034, 182 L. Ed. 2d 887 (2012) (according *Chevron* deference when the agency's regulations interpreting a statute are neither "arbitrary or capricious in substance, [n]or manifestly contrary to the statute.") (citation omitted). Courts cannot substitute their own interpretive judgment in *Chevron* step two for the reasonable judgment of the Commissioner. *Garcia v. Secretary of Health and Human Services*, 46 F.3d 552, 558 (6th Cir. 1995).

The Court must consider "the interstitial nature of the legal question, the

related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given the question over a long period of time" to determine "the appropriate legal lens through which to view the legality of the Agency interpretation at issue." *Barnhart v. Walton*, 535 U.S. 212, 222, 122 S. Ct. 1265, 1265, 152 L. Ed. 2d 330 (2002); *Stroup*, 327 F.3d at 1261 (same).

The Social Security Act furnished the SSA with "exceptionally broad authority to prescribe standards" to effectuate the statute, which is "among the most intricate ever drafted by Congress." *Schweiker v. Gray Panthers*, 453 U.S. 34, 43, 101 S. Ct. 2633, 2640, 69 L. Ed. 2d 460 (1981). Congress also routinely relies on and provides authority to the Commissioner to promulgate rules "necessary or appropriate to carry out" both the agency's functions and relevant statutory provisions. 42 U.S.C. §§ 405(a), 902(a)(5); *see also Hagans*, 694 F.3d at 302 ("In other words, the Social Security Act does not explicitly cover a vast number of details related to the day-to-day administration of the Social Security program, and Congress has relied on the SSA to fill this abyss.").

Additionally, the SSA is "probably the largest adjudicative agency in the western world," with a "self-evident" need for efficiency to administer such a complex and vast program. *Thomas*, 540 U.S. at 28-29, 124 S. Ct. at 382 (citation

23

omitted). The SSA has "a great deal of expertise in administering a complex program and has been entrusted with a great deal of power by Congress." *Hagans*, 694 F.3d at 304 (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981, 125 S. Ct. 2688, 162 L. Ed. 2d 820 (2005)).

Furthermore, the SSA's interpretation, as set out in AR 12-1(8) and the related POMS instruction, has been interpreted and applied consistently and highlights the importance of this question to the administration of the Social Security Act. The lack of notice and comment promulgation alone does not strip *Chevron* deference from Acquiescence Rulings. *See Mead*, 533 U.S. at 230-31, 121 S. Ct. at 2173 ("[A]s significant as notice-and-comment is in pointing to *Chevron* authority, the want of that procedure here does not decide the case, for we have sometimes found reasons for *Chevron* deference even when no such administrative formality was required and none was afforded."); *Walton*, 535 U.S. at 221, 122 S. Ct. at 1271 (concluding that the SSA's interpretation, reached "through means less formal than 'notice and comment' rulemaking . . . does not automatically deprive that interpretation of the judicial deference otherwise due" under *Chevron*). The presence or absence of notice-and-comment rulemaking is not dispositive. *Id.* at 222.

Acquiescence Ruling 12-1(8), though not promulgated through notice-and

comment-rulemaking and without the full force and effect of law, is an authoritative, interpretive, and permissive construction of the Social Security Act that is entitled to deference.[7] *See Garcia*, 46 F.3d 552, 557 (6th Cir. 1995) ("Although social security rulings do not have the force or effect of law, we are persuaded that *Chevron* applies to social security rulings insofar as the rulings directly involve construction of the statute . . . where the statutory language bears more than one interpretation, we will uphold the Secretary's interpretation if it is a permissible construction of the statute.") (citations omitted); *Fair v. Shalala*, 37 F.3d 1466 (11th Cir. 1994) (concluding that a SSA ruling was entitled to deference based on its consistency with the statutory language and legislative history); *Gordon v. Shalala*, 55 F.3d 101, 105 (2d Cir. 1995) ("The general rule on acquiescence rulings is that 'although they do not have the force and effect of law, they constitute SSA interpretations of its own regulations and the statute which it

---

[7] In *Hagans v. Commissioner*, 694 F.3d 287, 302(3d Cir. 2012), the Eighth Circuit applied the lower level of deference established in *Skidmore* v. *Swift & Co.*, 323 U.S. 134, 139-40, 65 S. Ct. 161, 89 L. Ed. 124 (1944), rather than *Chevron* deference, to a SSA Acquiescence Ruling based on the fact that the AR was not promulgated through notice-and-comment rulemaking and did not carry the force of law. However, the court in *Hagans* still afforded a high level of deference on the *Skidmore* sliding scale to the Commissioner's interpretation. Additionally, the court limited its decision to apply *Skidmore* deference to the specific Acquiescence Ruling in question and explicitly declined to decide whether "any Acquiescence Ruling could merit *Chevron* deference." *Id.* at 303 n. 19.  In this case, the Commissioner asserts that, in accordance with *Stroup* and other Eleventh Circuit precedent, *Chevron* should apply to the SSA's interpretation. Mr. Martin has made no argument that *Skidmore* is the more appropriate standard of deference. Accordingly, the Court has reviewed the Commissioner's interpretation within the *Chevron* rules of engagement.

administers. Accordingly, Social Security rulings are entitled to deference except when they are plainly erroneous or inconsistent with the [Social Security Act].'") (citations omitted).

The Commissioner's interpretation is also not inconsistent with the legislative history of the uniformed services exception. The House Conference Report explained that the uniformed services exception was enacted to ensure that "[a]n individual's receipt of a pension based wholly on service performed as a member of a uniformed service, *whether on active or inactive duty* . . . would not trigger application" of the WEP." H.R. Rep. No. 103-670, at 125 (Conf. Rep), 1994 U.S.C.C.A.N. 1553 (emphasis added). The Court agrees that, despite explicitly referencing both inactive and active *military* duty, the Conference Report does not necessarily imply that the uniformed services exception should also apply to Civil Service pensions.

Moreover, the SSA's interpretation accords with the explanation the SSA made in the preamble of the implementing regulation for the WEP uniformed services exception, 20 C.F.R. § 404.213(e)(9). The preamble specifies that the WEP no longer applies to "certain individuals who are eligible to receive or are receiving a benefit *based on inactive military reserve duty* after 1956 and before 1988." Computing Benefit Amounts, Reducing Benefit Amounts, and Filing

Annual Reports of Earnings, 60 F.R. 56511-01, 1995 WL 656205 (Nov. 9, 1995)

(emphasis added). The regulation later explains that for military reservists,

> as required by section 215(a)(7)(A) of the Act and §404.213(a) of these regulations, we will modify our computation of your basic benefit amount under the windfall elimination provision if you are also eligible after 1985 for a monthly pension based on your noncovered employment. "Noncovered employment" includes U.S. military service on inactive duty training after 1956 and before 1988, as explained in §404.1019. A pension based on such military service has been the only kind of pension based on military service which caused a reduced benefit under the government pension offset provision or a modified computation under the windfall elimination provision.
>
> Section 308 of Public Law 103-296 exempts entitlement to a payment based wholly on service as a member of a uniformed service as a basis for our modifying your basic benefit amount under the windfall elimination provision . . . [t]hus, inactive duty military service, which was not covered before 1988 and was used to determine your noncovered pension payment based wholly on service as a member of a uniformed service, is no longer a basis for our modifying your basic benefit amount . . . .

*Id.* (emphases added).

The SSA's stated intent in implementing the regulation remains consistent with the interpretative position the SSA has taken today: the uniformed services exception was enacted to protect the military pensions of service members, including inactive duty reservists. Neither the SSA's 1995 implementing regulation nor the SSA's Acquiescence Ruling in 2012 apply the uniformed services exception to the Civil Service pensions received by DSTechs separate

27

from their military pension pay.

Lastly, in and of itself, the SSA's Program Operations Manual System (POMS)[8] instruction issued by the SSA in accordance with the SSA's interpretation and Acquiescence Ruling 12-1(8) merits deference under the *Skidmore* framework. POMS are "publicly available operation instructions for processing Social Security claims" that, though they were not promulgated through formal rulemaking, "nevertheless warrant respect in closing the door on any suggestion that the usual rules of statutory construction should get short shrift." *Washington State Dept. of Social & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385, 123 S. Ct. 1017, 1026, 154 L. Ed. 2d 972 (2003); *see also Stroup*, 327 F.3d at 1262 ("While the POMS does not have the force of law, it can be persuasive.").

Most courts have treated the POMS as a system of interpretive instructions entitled to *Skidmore*[9] deference:

> Although the POMS does not have the force of law, which would entitle it to the high level of deference described in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), most courts have treated the POMS as

---

[8] The Program Operations Manual System (POMS) is a system of instructions "used by employees and agents of SSA to carry out the law, regulations, and rulings." https://www.ssa.gov/regulations/ (last visited February 22, 2017).

[9] *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40, 65 S. Ct. 161, 89 L. Ed. 124 (1944).

interpretive rules entitled to deference at the lower level established in *Skidmore v. Swift & Company*. *See Wash. State Dept. of Soc. and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385–86, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003) (POMS may be treated with deference even though it was not the product of formal rulemaking) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)); *Power v. Barnhart*, 292 F.3d at 785–86 (POMS is an agency interpretation which "lack[s] the administrative formality or other attributes that would justify substantial judicial deference under *Chevron* . . . and hence . . . [it] would at best qualify for the more limited form of deference accorded under *Skidmore*.") (internal citations omitted); *accord Davis v. Secretary of Health and Human Services*, 867 F.2d 336, 340 (6th Cir.1989) ("Although the POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims and does not have the force and effect of law, it is nevertheless persuasive."). There would be no need for a court to specify a particular level of deference for the POMS if the POMS were unreviewable by the courts; therefore, the courts' specification of a level of deference presumes that the POMS is final agency action. Accordingly, the POMS is subject to judicial review.

*Hall v. Sebelius*, 689 F. Supp. 2d 10 (D.D.C. 2009).

*Skidmore* deference acknowledges that an agency's interpretation of a statute it has been tasked with implementing "may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency . . . and given the value of uniformity in its administrative and judicial understandings of what a national law requires." *Mead*, 533 U.S. at 234, 121 S. Ct. at 2164 (quoting *Skidmore*, 323 U.S. at 139, 65 S. Ct. at 161). The amount of deference an agency interpretation receives under the

*Skidmore* spectrum depends on a number of factors, including (1) the thoroughness of the agency's consideration, (2) the "validity of the its reasoning," (3) the "consistency with earlier and later pronouncements," (4) and "all those factors which give it power to persuade, if lacking power to control." *Mead*, 533 U.S. at 228, 121 S. Ct. at 2172 (citing *Skidmore*, 323 U.S. at 140, 65 S. Ct. at 161).

Effective December 27, 2012, POMS RS 00605.380 instructs SSA employees and agents not to apply the WEP only when: (1) "the beneficiary receives a CSRS pension based wholly on services as a dual status civilian technician for the National Guard"; and (2) "the beneficiary has his permanent legal residence in AR, IA, MN, MO, NE, ND, or SD at the time we make the WEP determination or decision."[10] This position accords with AR 12-1(8) and demonstrates the consistency with which the SSA has applied its interpretation of the WEP's application to dual-status technicians, both before and after the Eighth Circuit's decision in *Petersen*.

For the above reasons, the Court will defer to the SSA's reasonable and permissive interpretation of the uniformed services exception, 42 U.S.C. § 415(a)(7)(A), to the Windfall Elimination Provision, as articulated in AR 12-1(8)

---

[10] POMS RS 00605.380 National Guard Civilian Pensions for Dual Status Technicians: *Petersen* Court Case, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0300605380 (last visited February 22, 2017).

and POMS RS 00605.380. Thus, the pension Mr. Martin receives based on his employment as a dual status technician does not fall within one of the WEP's exceptions and therefore was properly reduced.

CONCLUSION

For the above reasons, the Court concludes that 42 U.S.C. § 415(a)(7)(A) is ambiguous as to whether it applies to the Civil Service pensions of dual status technicians. The Commissioner's interpretation is a permissible and reasonable construction of the Social Security Act and is therefore entitled to deference. Accordingly, the Commissioner's decision is due to be **AFFIRMED** by separate order.

**DONE** this the 2nd day of March, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge